FARRA, Appellant,

v.

CITY OF DAYTON et al., Appellees.

[Cite as *Farra v. Dayton* (1989), 62 Ohio App.3d 487.]

Court of Appeals of Ohio,
Montgomery County.

No. 11196.

Decided Feb. 10, 1989.

*Steve J. Ruschau,* for appellant.

*James F. Greene, III,* for appellees Dayton Power & Light and Mike Dolph.

*Joseph P. Harmon,* assistant city attorney, for appellee city of Dayton.

WOLFF, Judge.

Donald M. Farra appeals from the Montgomery County Court of Common Pleas judgment which sustained the city of Dayton's motion to dismiss and Dayton Power and Light's and Mike Dolph's motion to dismiss.

Farra alleged in count one of the complaint that on or about January 9, 1986, he owned the property at 311 South Western Avenue, Dayton, Ohio. He alleged that an apartment and commercial building on the property were rented to tenants and that prior to January 9, 1986, the city of Dayton unsuccessfully attempted to purchase the property as part of an urban renewal project. He alleged that on or about February 6, 1986, the tenants began terminating their leases because of the city's untrue statements that the tenants must leave and that the city was the owner of the property.

Farra alleged that the city intentionally interfered with Farra's business interests by ordering the tenants to vacate the premises. He alleged that he incurred damages from lost rental income, from having to take out a loan because his income was reduced, from cleaning expenses, classified advertisements of the available apartments, attorney fees, and mileage incurred when he went to inspect the property.

Farra alleged in count two of his complaint that on or about April 17, 1986, Mike Dolph, a Dayton Power and Light serviceman, intentionally, maliciously, and without Farra's consent destroyed the door and lock when breaking into the building on Farra's property. Farra alleged that Dolph was working

within the scope and at the direction of his employer Dayton Power and Light. He alleged that Dayton Power and Light told Dolph to enter the building and remove gas and electric meters as requested by city officials. Farra alleged that he incurred damages from lost rental income from renting storage space, repairs and cleanup, attorney fees, lost wages, long distance telephone calls and mileage.

Farra made additional allegations in his complaint which are not at issue in this appeal and need no discussion.

The city filed its motion to dismiss pursuant to Civ.R. 12(B)(6) on March 4, 1988. Dayton Power and Light and Mike Dolph filed their motion to dismiss pursuant to Civ.R. 12(B)(1) on March 11, 1988. Farra filed memoranda in opposition on March 30, 1988.

On July 1, 1988, the trial court issued a decision and judgment which denied the city's motion to dismiss. The court stated that the city's acts in acquiring property for condemnation or rehabilitation were "governmental activities" (if not "urban renewal" actions) which were generally cloaked with immunity by R.C. 2744.02(A)(1) and 2744.01(C)(2)(p). The court stated, however, that R.C. 163.03 expressly imposed liability upon the city and that pursuant to R.C. 2744.02(B)(5), a statutory exception to immunity, immunity was unavailable.

R.C. 2744.02(B)(5) provides for an exception to statutory immunity for political subdivisions when liability is *expressly* imposed by the Revised Code.

The court also denied Dayton Power and Light's and Mike Dolph's motion to dismiss. The court stated that it, not the Public Utilities Commission of Ohio, had jurisdiction over the subject matter since Farra alleged the tort of damage to property and not a "service related complaint." The court acknowledged that the PUCO had jurisdiction over "all wrongs arising under the comprehensive plan for the regulation of public utilities" but stated that "the gravamen of the complaint sounds in tort and thus a court of general jurisdiction is competent to hear the claim."

On July 21, 1988, the city filed a motion for reconsideration of the trial court's July 1, 1988 judgment. Farra filed a memorandum in opposition to the city's motion for reconsideration. On August 30, 1988, the trial court issued a decision and final judgment and stated that the city's acts "were done in furtherance of an urban renewal project" which constituted a governmental function under R.C. 2744.01(C)(1). The court did not discuss whether R.C. 163.03 applied to the case. The court stated that Farra "has failed to state a claim on which relief can be granted pursuant to the immunity granted Defendant City of Dayton under R.C. 2744.01 and R.C. 2744.02."

The court also reconsidered its prior decision as to Dayton Power and Light and Mike Dolph. The court stated that it lacked subject matter jurisdiction over the matter and that Farra's complaint "should properly be brought before the Public Utilities Commission for a determination of any violation of Chapter 4905." The court sustained the city's motion to dismiss and Dayton Power and Light and Mike Dolph's motion to dismiss.

Farra raises two assignments of error in this appeal:

"The trial court erred in granting Dayton Power and Light Company's Motion to dismiss for lack of subject matter jurisdiction.

"The court erred in granting the city of Dayton's motion to dismiss for lack of subject matter jurisdiction as the city of Dayton is not immune from suit for the city of Dayton's conduct of intentionally or recklessly or negligently or wantonly trespassing on the land of the plaintiff by and through its agents Dayton Power and Light Company and intentionally interfering with the business relationships of the plaintiff and his tenants in a pattern of continuing harassment by that municipality against this plaintiff-appellant."

Farra argues in his first assignment of error that the trial court erred in dismissing his case against Dayton Power and Light and Mike Dolph for lack of subject matter jurisdiction. Farra relies on *State, ex rel. Dayton Power & Light Co., v. Riley* (1978), 53 Ohio St.2d 168, 7 O.O.3d 317, 373 N.E.2d 385; *Steffen v. General Tel. Co.* (1978), 60 Ohio App.2d 144, 14 O.O.3d 111, 395 N.E.2d 1346; and *Kohli v. Public Util. Comm.* (1985), 18 Ohio St.3d 12, 18 OBR 10, 479 N.E.2d 840.

The *Riley* court stated that " * * * the courts of this state are available to supplicants who have claims sounding in contract against a corporation coming under the authority of the Public Utilities Commission. * * * " *Id.*, 53 Ohio St.3d at 169, 7 O.O.3d at 318, 373 N.E.2d at 386.

The *Steffen* court stated that " * * * R.C. Title 49 * * * does not vest in the Commission exclusive jurisdiction over common law torts committed by public utilities." *Id.*, 60 Ohio App.2d at 148, 14 O.O.3d at 114, 395 N.E.2d at 1350. The court stated that the plaintiff-appellants' allegations that the telephone company maliciously or willfully violated their rights of privacy were " * * * wholly independent of all rights and obligations created by the [R.C. Title 49] 'comprehensive plan by which subscribers may contest the reasonableness of rates, rules, regulations and quality of service of a public utility' * * *." *Id.* at 147, 14 O.O.3d at 113, 395 N.E.2d at 1349–1350. The court concluded by stating that " * * * [i]ntentional, wilful and malicious torts committed by a public utility within the course of its service business are not within the exclusive jurisdiction of the Public Utilities Commission of Ohio, but may be litigated in the courts." *Id.* at 148, 14 O.O.3d at 114, 395 N.E.2d at 1350.

The *Kohli* court stated that " * * * a court of competent jurisdiction is the appropriate forum for common-law tort actions and not the Public Utilities Commission. * * * " *Id.* at 14, 18 OBR at 12, 479 N.E.2d at 842. The court stated that absent a commission regulation or order, R.C. Title 49 should not be expanded to apply to a utility's failure to warn of a potential danger and that such a claim sounded in tort which was " * * * more properly cognizable before a court of competent jurisdiction. * * * " *Id.*

These cases do not support the proposition that the trial court had subject matter jurisdiction over Farra's claim against Dayton Power and Light and Mike Dolph. Farra alleged in his complaint that Dolph, acting within the scope of his employment and at the direction of Dayton Power and Light, trespassed on Farra's property, destroyed the door and lock while breaking into the premises, and removed "certain gas and electric meters at the request of officials from the City of Dayton." Farra relies on the trial court's initial decision in this case and argues that he alleged the tort of damages to property and the negligent or reckless removal of permanent fixtures which did not fall under R.C. 4905.26 "complaints as to service." Farra states that his allegations against Dayton Power and Light and Mike Dolph were based on tort law and that the trial court had subject matter jurisdiction over this case according to *Riley, Steffen,* and *Kohli.*

Upon reconsideration, the trial court stated that the court lacked subject matter jurisdiction over Farra's complaint against Dayton Power and Light and Mike Dolph. We agree that the trial court lacked subject matter jurisdiction based on the following statutory and case law authority.

R.C. 4905.61 states:

"If any public utility or railroad does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4925. of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by such chapters, or by order of the public utilities commission, such public utility or railroad is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission. Any recovery under this section does not affect a recovery by the state for any penalty provided for in such chapters."

R.C. 4905.26 states in part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered,

charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or *that any regulation, measurement, or practice affecting or relating to any service furnished* by said public utility, or in connection with such service, *is,* or will be, *in any respect unreasonable, unjust,* insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen.  * * * "  (Emphasis added.)

The Supreme Court of Ohio in *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575, stated:

"A Court of Common Pleas is without jurisdiction to hear a claim seeking treble damages pursuant to R.C. 4905.61 absent a prior determination by the Public Utilities Commission that there was in fact a violation of R.C. Chapters 4901, 4903, 4905, 4907, 4909, 4921 or 4925, or an order of the commission." *Id.* at paragraph one of the syllabus.

The court in *State, ex rel. Dayton Power & Light Co., v. Kistler* (1979), 57 Ohio St.2d 21, 11 O.O.3d 108, 385 N.E.2d 1076, quoted *Milligan:*

" 'Bringing suit for treble damages against a utility, therefore, is dependent upon a finding that there was a violation of a specific statute * * * or an order of the commission.  Because such finding is within the exclusive jurisdiction of the commission, paragraph one of the syllabus in *State, ex rel. Northern Ohio Tel. Co., v. Winter* (1970), 23 Ohio St.2d 6 [52 O.O.2d 29, 260 N.E.2d 827], it follows that before a Court of Common Pleas has jurisdiction to hear a complaint for treble damages under R.C. § 4905.61, there first must be a determination by the commission that a violation has in fact taken place. An award of treble damages based upon an independent finding by a Court of Common Pleas of a violation of such statute or order would be void.  See *State, ex rel. Columbia Gas, v. Kiroff* (1976), 46 Ohio St.2d 397 [75 O.O.2d 461, 348 N.E.2d 705].' " *Kistler, supra,* 57 Ohio St.2d at 23, 11 O.O.3d at 109, 385 N.E.2d at 1077.

In this case, Farra alleged, in essence, that Dayton Power and Light and Mike Dolph unjustly and unreasonably removed gas and electric meters from his property: "Defendant Mike Dolph * * * a Dayton Power and Light serviceman, did intentionally, maliciously and without Plaintiff's consent, trespass at said premises and destroyed the door and lock in breaking into said premises."  Although Farra's complaint arguably alleges tortious con-

duct on the part of Dolph, Farra's allegations are, nevertheless, complaints as to service, and within the contemplation of R.C. 4905.26.

Clearly, the meters are related to Dayton Power and Light's service. The trespass, destruction of the door and lock, and breaking were incidental to Dayton Power and Light's removing the meters. Assuming the truth of the allegations, removal of the meters was an unjust, unreasonable practice affecting and relating to service. The characterization of Dolph's acts as intentional, malicious, and without Farra's consent does not alter the subject matter of the allegations against Dolph and Dayton Power & Light or remove them from the embrace of R.C. 4905.26. *Steffen, supra,* 60 Ohio App.2d at 146, 14 O.O.3d at 112, 395 N.E.2d at 1349.

Farra's complaint against Dayton Power and Light and Mike Dolph, in essence, sought damages for acts affecting and relating to service under R.C. 4905.26. Pursuant to R.C. 4905.26, a hearing must be held and a determination must be made by the PUCO before the court of common pleas has jurisdiction to hear the complaint for damages. See, also, *Kistler, supra,* 57 Ohio St.2d at 23, 11 O.O.3d at 110, 385 N.E.2d at 1078; *Milligan, supra,* paragraph one of the syllabus. See, also, *Williamson v. Dayton Power & Light Co.* (Aug. 26, 1981), Montgomery App. No. 7025, unreported, 1981 WL 2901. The first assignment of error is not well taken.

Farra states in his second assignment of error that the trial court erred in granting the city's motion to dismiss. Farra states that the city was not immune from liability for trespassing on his property, intentionally and wrongfully causing Farra's tenants to discontinue their tenancies, and intentionally interfering with Farra's business interests.

■ The trial court stated that the city was immune from suit pursuant to R.C. 2744.01 and 2744.02. The court decided that the alleged acts of the city constituted a "governmental function." Therefore, the city was immune from suit under R.C. 2744.01 *et seq.*

R.C. 2744.02(A)(1) states:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. *Except as provided in division (B) of this section, a political subdivision is not liable in damages* in a civil action *for injury, death, or loss* to persons or property allegedly *caused by any act or omission* of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added.)

"Governmental function" is defined in R.C. 2744.01(C)(1):

" 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following: * * *."

R.C. 2744.01(C)(2) states that "governmental function" includes "[u]rban renewal projects and the elimination of slum conditions[.]" R.C. 2744.-01(C)(2)(p) [now (q)].

Farra argues that the city cannot claim that the alleged acts constituted "urban renewal" under R.C. 2744.01(C)(2)(p) because the alleged acts occurred in January and April 1986, while the complaint for appropriation was not filed by the city until July 30, 1986. He states that "the urban project * * * commenced when the Appropriation proceeding started and not any time prior to that and therefore 2744.01(C)(2)(p) characterizing the action here as governmental function is not applicable."

■ Although the actions of the city preceded formal appropriation of Farra's property, the city's acts were still in furtherance of an urban renewal project. The city took steps prior to the appropriation of Farra's property to eliminate slum conditions when the city tried to purchase Farra's property as part of the urban renewal project. An urban renewal project does not necessarily start with the appropriation of property, and action by a city prior to appropriation and in furtherance of urban renewal is a governmental function and within the scope of R.C. 2744.01(C)(2)(p).

Farra also argues that the city is liable because R.C. 163.03 expressly imposes liability upon the city.

R.C. 163.03 states:

"Any agency may, upon the notice prescribed in this section, prior to or subsequent to the filing of a petition pursuant to section 163.05 of the Revised Code, enter upon any lands, waters, and premises for the purpose of making such surveys, soundings, drillings, appraisals, and examinations as are necessary or proper for the purpose of the agency under sections 163.01 to 163.22, inclusive, of the Revised Code, and such entry shall not constitute a trespass. Notice of such proposed entry shall be given to the owner or the person in possession by such means as are reasonably available not less than forty-eight hours nor more than thirty days prior to the date of such entry.

"The agency shall make restitution or reimbursement for any actual damage, resulting to such lands, waters, and premises and to improvements or personal property located in, on, along, over, or under such lands, waters, and premises, as a result of such activities. If the parties are unable to agree upon restitution or other settlement, damages are recoverable by civil action to which the state or agency hereby consents."

Farra argues that R.C. 163.03 must be liberally construed since the language in the second paragraph evidences the legislative intent not to limit the type of damages. Farra recognizes that liability shall not be imposed beyond the clear import of the statute but states that R.C. 163.03 clearly provides for liability in this case.

▮▮▮ Imposition of liability on a political subdivision occurs only when liability is *expressly* imposed by a section of the Revised Code. R.C. 2744.-02(B)(5). Given the allegations in this case, R.C. 163.03 does not expressly impose liability upon the city. R.C. 163.03 does not expressly provide that a political subdivision must pay damages stemming from intentional interference with an individual's business interests, which is the damage alleged by Farra. Damages from intentional interference with business interests are not damages "resulting *to* such lands, waters, and premises and *to* improvements or personal property located *in, on, along, over,* or *under* such lands, waters, and premises * * *." (Emphasis added.) R.C. 163.03. If the above emphasized prepositions are given their ordinary meaning, R.C. 163.03 is limited to damage to real property, improvements, and *tangible* personal property.

We would have to stretch the language of R.C. 163.03 to reach the result sought by Farra. R.C. 2744.02(B)(5) forbids imposition of liability upon political subdivisions absent express statutory language that imposes such liability. The language of R.C. 163.03 does not expressly impose liability on the city in this case. Thus, the city is protected by R.C. 2744.02(A)(1).

In his oral argument, Farra's attorney stated that R.C. 2744.03(A)(5) imposed liability upon the city. R.C. 2744.03(A) states:

"In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"* * * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

We do not agree that this section imposes liability upon the city. R.C. 2744.02(A)(1), *supra,* states that except as provided in division (B) of R.C. 2744.02 " * * * a political subdivision is not liable * * * for * * * loss * * *

allegedly caused by any act or omission of the political subdivision or * * * [its] employee * * *." As previously discussed, there is no liability on the part of the city under R.C. 2744.02(B). This being so, R.C. 2744.03, dealing with defenses and immunities, does not even come into play.

Finally, Farra argues that *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 201, 491 N.E.2d 1101, imposes liability on the city because the city intentionally made untrue statements to Farra's tenants which caused them to move. Farra states that the city should not be immunized from liability since *"Burr* * * * prevents a political subdivision from hiding behind a cloak of immunity when its conduct is reprehensible as it was in this case."

The *Burr* court stated:

"We find that sovereign immunity does not preclude this cause of action. The suit is premised not on injuries resulting from appellants' official policy of silence, but rather on appellants' active and knowing misrepresentation of fact. * * *" *Id.* at 76–77, 23 OBR at 206, 491 N.E.2d at 1108.

In *Burr,* active and knowing misrepresentations of fact occurred when a caseworker for the Stark County Welfare Department made false representations regarding the history of a child adopted by Mr. and Mrs. Burr.

The common-law doctrine of sovereign immunity was the source of immunity in *Burr.* In this case, R.C. 2744.01 *et seq.* is the source of immunity. The Supreme Court of Ohio in *King v. Williams* (1983), 5 Ohio St.3d 137, 140, 5 OBR 269, 272, 449 N.E.2d 452, 455, stated that "a statute may provide immunity from liability. * * *" In this case, R.C. 2744.01 *et seq.*, not the common-law doctrine of sovereign immunity, specifically provides that the city is not liable to Farra.

The broad language of R.C. 2744.02(A)(1) describes the extent of the immunity provided for political subdivisions. R.C. 2744.02(A)(1) states in part:

" * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by *any act or omission* of the political subdivision * * *." (Emphasis added.)

The phrase "any act or omission" clearly indicates a legislative intent to grant immunity to political subdivisions in the absence of express provision to the contrary. *Burr* is not determinative. The second assignment of error is not well taken.

The judgment will be affirmed.

*Judgment affirmed.*

WILSON and FAIN, JJ., concur.