[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 336.]

CAMPBELL ET AL., APPELLANTS, *v.* BURTON; CLIFTON ET AL., APPELLEES.

[Cite as *Campbell v. Burton*, 2001-Ohio-206.]

*Juvenile law—Child abuse—Within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability for failure to perform duty to report known or suspected child abuse—Political subdivision may be held liable for failure to perform duty expressly imposed on its employee by R.C. 2151.421—Employee of political subdivision may be held liable for failure to perform duty expressly imposed by R.C. 2151.421.*

(Nos. 99-1838 and 99-2106—Submitted September 12, 2000—Decided July 25, 2001.)

APPEAL from and CERTIFIED by the Court of Appeals for Greene County, No. 99CA12.

_____

SYLLABUS OF THE COURT

1. Within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability for failure to perform the duty to report known or suspected child abuse.

2. Pursuant to R.C. 2744.02(B)(5), a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421.

3. Pursuant to R.C. 2744.03(A)(6)(c), an employee of a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421.

_____

**DOUGLAS, J.**

{¶ 1} This case is before the court for the purpose of resolving a conflict among the courts of appeals for the Second, Fifth, Sixth, and Ninth District Courts of Appeals with regard to whether, within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability for failure to perform the duty to report known or suspected child abuse.

{¶ 2} Amber Campbell was an eighth-grade student at Baker Junior High, Fairborn City Schools ("Fairborn"), during the 1995 to 1996 school year. During the same time period Fairborn conducted a peer mediation program. The peer mediation program involved students as mediators and was designed to resolve disputes between students. Debra Mallonee was a teacher working for Fairborn from 1977 to 1997. In addition to teaching, Mallonee was the peer mediation coordinator.

{¶ 3} From January to August 1996, Mallonee was on sabbatical pursuing her Ph.D. at Ohio State University. During her sabbatical, Mallonee was authorized by the school to conduct mediations requested by teachers and administration.

{¶ 4} In March 1996, Campbell participated in two mediations as a disputant with another student, Amanda Adkins, regarding a disagreement over a male classmate. In the first mediation, Campbell, Adkins, and Mallonee were present. The mediation concluded with Campbell and Adkins entering into a written agreement. When their dispute resumed shortly thereafter, Adkins sought another mediation with Campbell.

{¶ 5} According to Campbell, during the second mediation she told Mallonee that there was a male friend of the family, David Burton, who hugged her and made her feel uncomfortable. Relating an incident in which Burton picked her up from Saturday school in his car, Campbell stated, "[H]e told me to kiss him and slapped me on the butt and touched my necklace and went down to my breasts and crotch area." Campbell described another incident in which Campbell sat on

2

Burton's lap while sledding. In addition, Campbell stated in her deposition that she told Mallonee that Burton would call her and ask her to go over to his house when no one else was home. Specifically, Mallonee recounted in her deposition that Campbell told her that Burton would try to touch her and kiss her and that this made her uncomfortable.[1]

{¶ 6} In addition to the information regarding Burton, Campbell said she also told Mallonee a story about Campbell having sex with the brother of one of her friends. Campbell claimed that Mallonee did not pay attention to what she had said about Burton, so Campbell made up the story about having sex with the friend's brother in order to get Mallonee's attention. Mallonee recalled the incident differently, stating that Campbell first told the story about having sex with the brother of a friend and then described the incidents with Burton. Mallonee believed that the story about Burton was simply an attempt by Campbell to change the subject from the initial discussion about having sex with the brother of her friend.

{¶ 7} At the close of the mediation, Mallonee instructed Campbell to tell her mother about Burton and to stay away from him if he made her feel uncomfortable. Mallonee did not report Campbell's concerns regarding Burton to anyone. Campbell alleges that after her conversation with Mallonee, Burton continued to hug her, touch her buttocks, and on one occasion "french kissed" her.

{¶ 8} On March 21, 1997, Campbell, through her mother and next friend, Sharon Campbell, and father, Carl W. Campbell, appellants, filed an action against Steven Clifton, who is the Superintendent of Fairborn City Schools, and the Board of Education of the Fairborn City Schools (also "Fairborn"), appellees, and Burton. On March 23, 1998, appellants filed an action against Mallonee, who is also an appellee. The two complaints allege that appellees failed to report, pursuant to R.C.

---

1. While there is considerable disagreement in the testimony regarding the detail of the information that was provided by Campbell to Mallonee, the testimony of the parties is consistent on the fact that Burton at least tried to touch and kiss Campbell and made her feel uncomfortable.

2151.421, the alleged abuse. As a result of Mallonee's failure to report Campbell's concerns, appellants contend, Campbell suffered psychological and other permanent injury. The court consolidated the two cases.

{¶ 9} On January 27, 1999, the trial court granted summary judgment in favor of Clifton and Mallonee on the basis that they were immune from liability pursuant to R.C. 2744.03(A)(6). The trial court also granted summary judgment in favor of Fairborn on the grounds that it was immune from liability pursuant to R.C. 2744.02(A)(1).

{¶ 10} Appellants appealed the trial court's decision to the Greene County Court of Appeals. The court of appeals affirmed, holding that within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 did not expressly impose liability. Appellants then moved the court of appeals to certify a conflict in this case. The court of appeals granted the motion with respect to the following cases: *Rich v. Erie Cty. Dept. of Human Resources* (1995), 106 Ohio App.3d 88, 665 N.E.2d 278; *Crago v. Lorain Cty. Commrs.* (1990), 69 Ohio App.3d 24, 590 N.E.2d 15; *Sprouse v. Lucas Cty. Bd. of Edn.* (Mar. 12, 1999), Lucas App. No. L-98-1098, unreported, 1999 WL 128636; *Reed v. Perry Cty. Children's Serv.* (June 29, 1993), Perry App. No. CA-429, unreported, 1993 WL 274299. This cause is now before this court upon our determination that a conflict exists (case No. 99-2106), and pursuant to the allowance of a discretionary appeal (case No. 99-1838).

{¶ 11} The certified question presented to this court on appeal from the Second Appellate district is:

"For the purposes of the immunity exceptions in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c), does R.C. 2151.421 expressly impose liability on political subdivisions and their employees for failure to report child abuse?"

{¶ 12} We answer the certified question in the affirmative. R.C. 2151.421, through its penalty statute, R.C. 2151.99, expressly imposes liability, within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), on political subdivisions and

their employees for failure to report suspected child abuse. Accordingly, we reverse the judgment of the court of appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

{¶ 13} The issues raised by the parties concern sovereign immunity pursuant to the Political Subdivision Tort Liability Act and the exceptions to immunity set forth in R.C. 2744.02 and 2744.03.[2] In order to determine immunities set forth in the chapter, a three-tiered analysis of R.C. Chapter 2744 is required. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614. First, we analyze R.C. 2744.02(A)(1), which provides:

"Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision * * *."

{¶ 14} Second, we analyze R.C. 2744.02(B), which provides: "[S]ubject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees * * * as follows." These exceptions to immunity are set forth in R.C. 2744.02(B)(1) through (5). For the purposes of the present case, only R.C. 2744.02(B)(5) applies. It provides:

"In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed

---

2. This case is governed by R.C. 2744.02 and 2744.03 as amended by Am.Sub.S.B. No. 221, 145 Ohio Laws, Part II, 2211, 2215-2218, eff. Sept. 28, 1994.

upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

{¶ 15} The third and final tier of analysis requires review of R.C. 2744.03 and 2744.05. R.C. 2744.05, which restricts damage awards, is not applicable here. R.C. 2744.03, which provides defenses and immunities to political subdivisions, is applicable. For the purposes of our review, only R.C. 2744.03(A)(6) applies. It provides immunity to an employee of a political subdivision unless an exception found within R.C. 2744.03(A)(6)(a) through (c) applies. Only R.C. 2744.03(A)(6)(c) is pertinent. R.C. 2744.03(A)(6)(c) provides that an employee may be liable if "[l]iability is expressly imposed upon the employee by a section of the Revised Code."

{¶ 16} As stated in the exceptions to immunity set forth in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c), an express imposition of liability in another section of the Revised Code negates immunity. Accordingly, we direct our attention to R.C. 2151.421, which mandates the reporting of known or suspected child abuse. We must further determine whether R.C. 2151.421 expressly imposes liability within the meaning of R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c).

{¶ 17} R.C. 2151.421(A)(1)(a)[3] states:

"No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to

---

3. Both parties cite the current version of R.C. 2151.421, which was not in effect at the time of Mallonee's alleged failure to report the suspected abuse. However, for the purposes of this cause of action there is no substantive difference between the current and former versions of the statute, and, accordingly, there is no need to distinguish the two versions. See Am.Sub.H.B. No. 154, 144 Ohio Laws, Part II, 3198, 3213.

immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer * * *."

{¶ 18} R.C. 2151.421(A)(1)(b) lists "school teacher; school employee; school authority" and other professionals as persons required to report any known or suspected abuse or neglect. In *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 119, 554 N.E.2d 1301, 1308, we found that the General Assembly enacted R.C. 2151.421 to safeguard children from abuse. In many instances, only the state and its political subdivisions can protect children from abuse. *Id.* Additionally, we found that children services agencies must protect children from abuse and eliminate the source of any such abuse. *Id.*[4] Thus, it is clear that the concern of the General Assembly in enacting R.C. 2151.421 was not political subdivisions or their employees, but the protection of children from abuse and neglect.

{¶ 19} Appellees argue that R.C. 2151.421 does not expressly impose liability. We disagree. R.C. 2151.421(A) requires that certain persons report known or suspected child abuse. R.C. 2151.99 provides, "Whoever violates * * * division (A)(1) * * * of section 2151.421 of the Revised Code is guilty of a misdemeanor of the fourth degree." Thus, anyone who is required by R.C. 2151.421 to report known or suspected child abuse but fails to report such abuse is guilty of a fourth-degree misdemeanor.

{¶ 20} Appellees argue that a criminal sanction is not an express imposition of liability within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c). Interestingly, appellees cite a definition of "liability" that states, "The quality or

4. In *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301, paragraph two of the syllabus, we held with respect to alleged failure to report pursuant to R.C. 2151.421, known or suspected child abuse, that the public-duty doctrine may not be raised as a defense for failure of an agency to comply with such statutory requirements. We specifically stated that the analysis of *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, did not apply.

state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Black's Law Dictionary (7 Ed.1999) 925. We find this definition compelling.

{¶ 21} In R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), the term "liability" is not modified by the words "civil" or "criminal." Therefore, by its very definition, "liability" refers to either a criminal or civil penalty. In reviewing these provisions of the statute "it is the duty of this court to give effect to the words used, not to delete words used or insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus, citing *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9.

{¶ 22} Appellees also contend that the word "liability" as used in R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) can only be interpreted as referring to civil liability, since the general immunity provision of R.C. 2744.02(A)(1) provides for civil immunity. Contrary to appellees' arguments, the term "liability" as set forth in R.C. 2744.02(B)(5) means liability that "is expressly imposed upon the political subdivision by a section of the Revised Code." It is evident from a plain reading of R.C. 2744.02(B)(5) that the legislature is using the term "liability" as set forth in *other* chapters of the Revised Code, and not within the context of R.C. 2744.02(A)(1). In addition, it is instructive to compare and contrast the actual language of each section of the code. Specifically, R.C. 2744.02(A)(1) provides for immunity from *civil liability*. In contrast, R.C. 2744.02(B)(5) is not as narrowly drawn. All it requires is express imposition of "liability" by another section of the Revised Code. When that exists the exception to immunity is satisfied. Accordingly, had the legislature intended to restrict the exception to immunity in R.C. 2744.02(B)(5) to *civil* liability, it certainly knew how to do so. See, also, R.C. 2151.421(G)(1), where the General Assembly used both the words "civil" and "criminal" in conjunction with the word "liability."

**{¶ 23}** The General Assembly enacted R.C. 2151.421 to provide special protection to children from abuse and neglect. In order to achieve this goal, the General Assembly had to encourage those with special relationships with children, such as doctors and teachers, to report known or suspected child abuse. R.C. 2151.99 imposes a criminal penalty for failure to report. Furthermore, the General Assembly encouraged reporting by providing immunity from both civil and criminal liability to the persons whose duty it is to report. R.C. 2151.421(G)(1).[5] Thus, the General Assembly clearly encouraged reporting and specifically discouraged the failure to report by imposing a criminal penalty pursuant to R.C. 2151.99. We disagree with appellees' contention that in the absence of the word "liability" from R.C. 2151.99 they are entitled to immunity. To the contrary, we can imagine no stronger intent than to *actually impose* liability through R.C. 2151.99, as the General Assembly has done.

**{¶ 24}** Accordingly, we hold that within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability for failure to perform the duty to report known or suspected child abuse.

### I. Liability of Fairborn

**{¶ 25}** In order to determine the potential liability of Fairborn, we now apply the three-tiered analysis of R.C. Chapter 2744 as set forth above. Again, pursuant to R.C. 2744.02(A)(1), a political subdivision is immune from liability for its acts or omissions or the acts or omissions of its employees, unless one of the exceptions set forth in R.C. 2744.02(B) applies. Accordingly, under the first tier of analysis, Fairborn is generally immune for Mallonee's alleged failure to report.

**{¶ 26}** Next we determine whether one of the R.C. 2744.02(B) exceptions applies. The only pertinent exception is found in R.C. 2744.02(B)(5), which states that "a political subdivision is liable * * * when liability is expressly imposed upon

---

5. R.C. 2151.421(G)(1), now R.C. 2151.421(G)(1)(a).

the political subdivision by a section of the Revised Code * * *." As explained above, R.C. 2151.421 expressly imposes liability for the failure to report known or suspected child abuse. Thus, if Fairborn had a duty to report, then immunity pursuant to R.C. 2744.02(B)(5) is not available to Fairborn.

{¶ 27} Finally, we are required to review R.C. 2744.03, which gives defenses and immunities to subdivisions and subdivision employees, and R.C. 2744.05, which limits damages. It is clear that nothing in R.C. 2744.03 or 2744.05 applies in the case before us. Therefore, we hold that, pursuant to R.C. 2744.02(B)(5), Fairborn is not immune from liability.

{¶ 28} Based upon the foregoing analysis, we find that pursuant to R.C. 2744.02(B)(5), a political subdivision may be held liable for failure to perform a duty expressly imposed on its employee by R.C. 2151.421.

II. Liability of Clifton and Mallonee

{¶ 29} Clifton and Mallonee claim immunity pursuant to R.C. 2744.03(A)(6). However, the immunity provided to employees of a political subdivision by R.C. 2744.03(A)(6) is subject to exceptions provided by subsections (a) through (c). R.C. 2744.03(A)(6)(c) tracks the language of R.C. 2744.02(B)(5) and denies immunity if "[l]iability is expressly imposed upon the employee by a section of the Revised Code."

{¶ 30} Since R.C. 2744.03(A)(6)(c), like R.C. 2744.02(B)(5), provides an exception to immunity where a section of the Revised Code *expressly* imposes liability, we reach the same conclusion with respect to the liability of Clifton and Mallonee as we did with Fairborn. We hold that pursuant to R.C. 2744.03(A)(6)(c), an employee of a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421.

{¶ 31} While we hold that liability may be imposed, we make no determination of appellees' liability. The only determination we make is that the

claim of *sovereign immunity*[6] is not available to appellees. The evidence provided by appellants at trial may or may not be sufficient to support the contention that appellees should have reported Campbell's concerns pursuant to R.C. 2151.421.

{¶ 32} The judgment of the court of appeals is reversed, and this cause is remanded to the trial court.

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 33} By virtue of R.C. 2151.99's *criminal* penalty for a failure to report suspected child abuse, the majority holds that R.C. 2151.421 "expressly imposes" *civil* liability on political subdivisions and their employees within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c). Because the majority strains to so interpret these statutes, I respectfully dissent.

{¶ 34} Fairborn City Schools ("Fairborn") is a political subdivision, as defined in R.C. 2744.01(F), and is therefore entitled to immunity from tort liability as provided in R.C. Chapter 2744. R.C. 2744.02(A)(1) cloaks a political subdivision with a general grant of immunity, subject to the exceptions enumerated in R.C. 2744.02(B). See *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141, 1146. The exception relevant here, R.C. 2744.02(B)(5), states:

"[A] political subdivision is liable for injury, death, or loss to persons or property when liability is *expressly imposed upon the political subdivision* by a

_____

6. For comparison to statutes that impose a duty but do not expressly impose liability, see *Marshall v. Montgomery Cty. Children Serv. Bd.* (2001), 92 Ohio St.3d 348, ___ N.E.2d ___, and *Butler v. Jordan* (2001), 92 Ohio St.3d 354, ___ N.E.2d ___.

section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue or be sued." (Emphasis added.)

{¶ 35} As individual employees of Fairborn, Mallonee and Clifton were also entitled to qualified immunity under R.C. 2744.03(A)(6). Much like the immunity granted to political subdivisions, R.C. 2744.03(A)(6) generally immunizes employees from liability so long as none of the enumerated exceptions applies. The exception relevant here, R.C. 2744.03(A)(6)(c), removes an employee's immunity if liability "is expressly imposed upon the employee by a section of the Revised Code."

{¶ 36} When interpreting statutes, we must give words their ordinary and natural meaning unless a different intention appears in the statute. *Layman v. Woo* (1997), 78 Ohio St.3d 485, 487, 678 N.E.2d 1217, 1218. The ordinary definition of "expressly" is "in direct or unmistakable terms * * *: *explicitly*, definitely, directly." (Emphasis added.) Webster's Third New International Dictionary (1971) 803. Thus, the relevant inquiry is whether R.C. 2151.421 unmistakably and explicitly states that a political subdivision or its employee will be liable in tort for a failure to report suspected child abuse.

{¶ 37} As the majority notes, R.C. 2151.421(A) requires "that certain persons report known or suspected child abuse." The statute does not, however, explicitly declare "in direct or unmistakable terms" that either a political subdivision or its employee will be liable for failure to comply with R.C. 2151.421(A).[7] Without an explicit statement that liability will follow from an

7. R.C. 2744.02(B)(5) instructs us *not* to find liability to exist merely because another section of the Revised Code imposes a responsibility. Though R.C. 2744.03(A)(6)(c) does not include a similar statement, it does not follow that we must construe a statutory duty as an express imposition of liability under R.C. 2744.03(A)(6)(c). Liability does not automatically follow from the breach

employee's failure to report abuse, we are left to *infer* the existence of liability for the employee's breach of the statutory duty. That we must *infer* liability necessarily means that the statute does not *expressly* impose it. Because it contains no explicit declaration that the political subdivision or its employee can be held liable in a civil action for damages, R.C. 2151.421, standing alone, cannot trigger the R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) exceptions to immunity. See *Colling v. Franklin Cty. Children Serv.* (1993), 89 Ohio App.3d 245, 253, 624 N.E.2d 230, 236 (noting that courts should not stretch statutes beyond their ordinary meaning in order to impose liability under R.C. 2744.02[B][5]), citing *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 496, 576 N.E.2d 807, 812-813.[8]

{¶ 38} The majority solves this analytic problem by invoking R.C. 2151.99, which imposes criminal liability on any person who fails to comply with his or her reporting duty under R.C. 2151.421(A). Because any person who fails to report known or suspected child abuse as required by R.C. 2151.421 is guilty of a fourth-degree misdemeanor, the majority concludes that R.C. 2151.421 expressly imposes liability within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c). In other words, the majority has determined that R.C. 2151.99's criminal penalty transforms R.C. 2151.421(A)'s duty to report into an express imposition of liability on both the political subdivision and its employee.

---

of a statutory duty. *Agnew v. Porter* (1970), 23 Ohio St.2d 18, 23, 52 O.O.2d 79, 81-82, 260 N.E.2d 830, 833. Even when a duty exists, an immunity defense (if applicable) is still available. See *id.* Cf. *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 496-497, 727 N.E.2d 1277, 1281 (even if violation of specific statutory duty might be negligence *per se*, a valid excuse may nonetheless preclude liability).

8. R.C. 2744.02(B)(5) is itself instructive concerning what will constitute an express imposition of liability. It cites R.C. 2743.02 and 5591.37 as examples of statutes that expressly impose liability upon a political subdivision. R.C. 2743.02(B) "*waives the immunity from liability* of all hospitals owned or operated by one or more political subdivisions and consents for them to be sued, *and to have their liability determined*." (Emphasis added.) Similarly, R.C. 5591.37 provides that "[f]ailure to comply with section 5591.36 of the Revised Code *shall render the county liable*" for damages. (Emphasis added.) Unlike R.C. 2151.421, these statutes declare in no uncertain terms that a political subdivision will be liable in a civil action for damages.

**{¶ 39}** As applied to Fairborn's potential liability, however, the majority's interpretation is at odds with the plain language of R.C. 2744.02(B)(5). By its very terms, the R.C. 2744.02(B)(5) immunity exception applies only when "liability is expressly imposed *upon the political subdivision* by a section of the Revised Code." (Emphasis added.) Neither R.C. 2151.421 nor 2151.99, whether read individually or together, does this. The only persons who may be guilty of a fourth-degree misdemeanor under R.C. 2151.99 are those specified in R.C. 2151.421(A) as having a duty to report. Nowhere in R.C. 2151.421(A), however, does it say that a *political subdivision* has a duty to report. And nowhere in R.C. 2151.99 does it say that a political subdivision, or any other entity for that matter, may be held criminally responsible for an employee's failure to report suspected child abuse.

**{¶ 40}** I therefore cannot agree with the majority's holding that R.C. 2151.421, by virtue of R.C. 2151.99's criminal penalty, expressly imposes liability upon Fairborn within the meaning of the R.C. 2744.02(B)(5) immunity exception. The majority's holding not only opens the door to civil liability but is also tantamount to a decree that a political subdivision can be *criminally prosecuted* for a person's failure to report suspected abuse. This is a remarkable proposition for which there is no statutory support, and one that would surely come as a surprise to the myriad political subdivisions that employ persons to whom the R.C. 2151.421(A) reporting duty applies.

**{¶ 41}** The majority's rationale is more defensible as applied to the potential liability of Mallonee and Clifton. As school district employees, both are included among the persons required to report suspected child abuse under R.C. 2151.421(A). Thus, they were theoretically subject to criminal liability under R.C. 2151.99 if they failed to discharge a duty to report. But even as applied to these individual defendants, the majority's analysis ultimately collapses under the weight of the statutory language.

14

**{¶ 42}** Because neither R.C. 2744.02(B)(5) nor 2744.03(A)(6)(c) modifies the word "liability" with the word "civil" or "criminal," the majority surmises that the term "liability" refers to *either* civil or criminal consequences. The majority thus equates R.C. 2151.99's express imposition of *criminal* liability with the type of "expressly imposed" liability required by R.C. 2744.03(A)(6)(c)'s immunity exception. But this view takes the word "liability" out of context. When viewed in the proper context, it becomes evident that the term "liability" as used in R.C. 2744.03(A)(6)(c) refers to *civil* liability and nothing more.

**{¶ 43}** R.C. 2744.03(A)(1) through (A)(7) contain various "defenses or immunities" that political subdivisions or their employees may raise in a civil action for damages. R.C. 2744.03(A). The paragraph introducing these "defenses or immunities" states:

"In a *civil action* brought against a political subdivision or an employee of a political subdivision to recover damages * * * caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish *nonliability*." (Emphasis added.)

**{¶ 44}** This introductory paragraph specifies that the "defenses or immunities" contained in R.C. 2744.03(A)(1) through (A)(7) are relevant in determining whether a political subdivision or its employee will be liable in a civil action for damages. Accordingly, when R.C. 2744.03(A)(6)(c) provides that a political subdivision employee "is immune from liability unless * * * [l]iability is expressly imposed upon the employee by a section of the Revised Code," the statute means that the employee is immune from *civil* liability unless that liability is expressly imposed by another Revised Code section. This is the only interpretation that harmonizes the various references to "liability" throughout R.C. Chapter 2744. Cf. *Sargi v. Kent City Bd. of Edn.* (C.A.6, 1995), 70 F.3d 907, 913 (refusing to construe R.C. 4511.99's criminal penalty as an express imposition of liability for violation of R.C. 4511.76). Accepting the majority's interpretation would require

us to conclude that the unmodified term "liability" in the clause granting immunity (*i.e.*, "the employee is immune from liability unless one of the following applies") means civil liability, whereas that same unmodified term "liability" in the clause providing an exception (*i.e.*, "Liability is expressly imposed upon the employee by a section of the Revised Code") means either civil *or* criminal liability. It seems highly unlikely, however, that the General Assembly intended the same word to have different meanings within the same division of a statute. Nonetheless, the majority adopts this doubtful interpretation despite the lack of statutory language to support it.

{¶ 45} If the legislature had truly intended to subject a political subdivision and its employees to tort liability for a violation of R.C. 2151.421, it would have expressly done so. Absent an express imposition of liability, the trial court correctly granted summary judgment for Fairborn, Mallonee, and Clifton based on R.C. Chapter 2744 immunity. I would therefore affirm the judgment of the court of appeals.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

——————————

*Gary J. Leppla* and *Jennifer L. Hill*, for appellants.

*Law Offices of Nicholas E. Subashi*, *Nicholas E. Subashi* and *David J. Arens*, for appellees.

*Issac, Brant, Ledman & Teetor*, *Mark Landes* and *Barbara Kozar Letcher*, urging affirmance for *amici curiae* County Commissioners Association of Ohio and Public Children's Service Association of Ohio.

*Cloppert, Portman, Sauter, Lantanick & Foley* and *Frederick G. Cloppert, Jr.*, urging affirmance for *amicus curiae* Ohio Education Association.

——————————

16