[Cite as *W.H. v. Akron City School Dist. Bd. of Edn.*, 2025-Ohio-531.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| W.H. | C.A. Nos.  31064 |
| M.J. | 31065 |
| Appellees | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AKRON CITY SCHOOL DIST. BD. OF EDN. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE Nos.  CV-2021-03-0984 |
| Appellants | CV-2021-03-0994 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2025

---

STEVENSON, Presiding Judge.

{¶1} Defendants-Appellants, Akron City School District ("APS"), and Akron City School District Board of Education ("Board") (collectively "Appellants") appeal from the judgment of the Summit County Court of Common Pleas denying their motion for summary judgment on the narrow issue of whether any R.C. 2744.03 defenses applied to restore political subdivision immunity. For the reasons set forth below, this Court reverses.

I.

{¶2} Plaintiffs-Appellees in this matter are minors, W.H. and M.J., by and through their Guardians. The background of this case is set forth in our previous decision, *M.J. v. Akron City School Dist.*, 2023-Ohio-4764 (9th Dist.) ("*M.J. I*").  In *M.J. I*, this Court summarized the pertinent facts, procedural history, and disposition as follows:

> This appeal arises from circumstances surrounding Christopher Hendon's impersonation of a police officer in April 2017 at Leggett Community Learning

Center, an APS elementary school. Mr. Hendon, who had been sent by a parent to pick up her child, entered Leggett CLC wearing SWAT gear, including a bullet proof vest. Mr. Hendon was armed with a gun and taser. When Ms. DeLisi, the school secretary, took the parent's phone call regarding Mr. Hendon, the parent told Ms. DeLisi "she was sending in her police friend to deal with her son[.]" APS employees did not ask Mr. Hendon to sign in, nor did they verify he was an actual police officer. The employees assumed Mr. Hendon was a police officer based upon the conversation they had with the child's mother, Mr. Hendon's clothing, and the fact Mr. Hendon was talking to other police officers in the school parking lot. The APS employees allowed Mr. Hendon, an armed stranger, unfettered access to Leggett CLC, and its students, on several occasions without ever verifying his identity or employment. Mr. Hendon also brought another individual into Leggett CLC named "James" who was also allowed access to the school and students without verification of his identity or employment. James was not dressed as a police officer and wore plain clothing. During visits to Leggett CLC, Mr. Hendon disciplined students by handcuffing them and making them do physical exercise. Mr. Hendon yelled and cursed at students, assaulted students, "arrested" students, and took students from school property in a private vehicle. Although Mr. Hendon spoke with Leggett CLC administrators and teachers about his desire to reinstitute a "scared straight" program at APS, the employees knew no such program existed at APS. Mr. Hendon was also given access to certain students' report cards, medical, and contact information.

Appellees filed federal lawsuits against Appellants which were disposed of in favor of Appellants, with only state claims remaining. Appellees then filed the following causes of action, in state court, against Appellants alleging: (1) violation of R.C. 3319.321, release of confidential records; (2) violation of R.C. 4112.02(G), public accommodation (race); (3) violation of R.C. 4112.02(G), public accommodation (disability); (4) violation of R.C. 2151.421, failure to report child abuse; (5) violation of R.C. 2744.02(B)(2)/(B)(4), negligence-political subdivision; (6) violation of R.C. 2744.03(A)(5), negligence-political subdivision; (7) violation of R.C. 2919.22, negligence per se; (8) violation of R.C. 2307.60, criminal liability for assault; (9) invasion of privacy; and (10) loss of consortium.

After exchange of discovery, Appellants filed motions for summary judgment on the basis of statutory immunity and Appellees opposed those motions. Appellants also filed replies in support of summary judgment. The trial court granted Appellants' motions for summary judgment, in part, and denied them, in part. In so doing, the trial court granted APS and the Board of Education immunity on all claims except those alleging a violation of R.C. 4112.02(G), for public accommodation as to race and disability. Further, the trial court granted statutory immunity to David James, the former superintendent of APS. The trial court, pursuant to R.C. 2744.03(6)(B), denied statutory immunity to Ms. Vincente, Ms. Morrison, Ms. Ramon, Ms. DeLisi, and Ms. Derita because reasonable minds could differ as to whether their acts or omissions were done in a reckless manner.

Appellants filed a timely appeal raising a sole assignment of error for our review.

. . .

Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in R.C. 2744.01 et seq. The Act sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. Under the first tier of the analysis, political subdivisions enjoy a general grant of immunity for any injuries, deaths, or losses allegedly caused by any act or omission of the political subdivision or [its] employee [. . .] in connection with a governmental or proprietary function. That immunity, however, is not absolute.

Under the second tier of the analysis, a political subdivision's comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B). If one of those exceptions applies, R.C. 2744.02(B) also provides several full defenses a political subdivision may assert in specific instances. Those full defenses, if proven, will result in the political subdivision retaining its cloak of immunity. If no full defense is proven or available to the political subdivision under R.C. 2744.02(B)(1), then the analysis proceeds to the third tier. Under the third tier, immunity may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies.

. . .

**APS/Board of Education**

In its order, the trial court found, under the first tier, "[t]he parties agree that [APS] and [the] Board of Education are political subdivisions pursuant to [R.C.] 2744.01(F)[.]" It found, however, there is a genuine issue of material fact regarding whether one of the exceptions under the second tier applies. The trial court stated:

> After reviewing the numerous depositions and exhibits filed in this case, this [c]ourt determines that a genuine issue of material fact exists regarding whether the plaintiffs were denied benefits and whether they were treated less favorably. The [c]ourt, at the summary judgment phase, is not tasked with weighing the evidence. [] Reasonable minds could differ regarding what occurred in August 2017. It is not for the [c]ourt to decide if the affected children were treated less favorably than their fellow students or weigh the evidence regarding these allegations. As such, this [c]ourt denies [APS's] and the Board of Education's [m]otion for [s]ummary [j]udgment regarding Plaintiffs' respective [s]econd and [t]hird [c]auses of [a]ction.

Upon review of the record, we conclude the trial court erred when it failed to conduct all three parts of the political-subdivision immunity analysis before ruling on Appellants' motions for summary judgment. The trial court ended its analysis at the second tier and, in so doing, did not analyze whether any R.C. 2744.03 defenses applied to restore immunity to APS and the Board of Education.

> Therefore, because the trial court failed to complete the entire political-subdivision immunity analysis, we reverse its decision and remand for further proceedings. Further, because the trial court's ruling on this issue may render APS's and the Board of Education's argument moot, we decline to address it because it is premature.

(Internal quotations and citations omitted.). *Id*. at ¶ 2-5, 8, 9, 12-14.

{¶3} On remand, the trial court set a briefing schedule to address only the third tier of the immunity analysis based on its interpretation of our decision in *M.J. I*. Appellees filed their brief, and APS and the Board filed a supplemental motion for summary judgment which Appellees moved to strike. The trial court ruled that the supplemental motion for summary judgment was based on the dissent authored by Judge Carr in *M.J. I*, and therefore, the motion addressed an issue that was not before the court on remand. While the court did not strike the motion, it expressly stated that its review of the motion would be limited to the single issue it believed was before it on remand, the third tier defenses under R.C. 2744.03. In a separate order, the trial court denied summary judgment, concluding that "the third tier of the political-subdivision analysis does not apply and does not restore immunity to APS and the [Board]."

{¶4} Appellants timely appealed and assert a single assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING DEFENDANTS/APPELLANTS AKRON CITY SCHOOL DISTRICT AND AKRON CITY SCHOOL DISTRICT BOARD OF EDUCATION SUMMARY JUDGMENT IN FULL BASED ON STATUTORY IMMUNITY. (3/8/2024 ORDERS T.D. *M.J.* 199-200 [CAPTIONED IN BOTH M.J. AND M.H.[]]**

{¶5} Summary judgment is appropriate if: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing

such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E). We review a summary judgment order de novo. *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996).

{¶6} We note as a threshold matter that the parties do not dispute that Appellants are political subdivisions under R.C. 2744.01(F) and have general immunity under the first tier of the immunity analysis. Appellants argue that the trial court erred in denying summary judgment on Appellees' discrimination claims under tier two of the immunity analysis because R.C. 4112.02(G) (Unlawful discriminatory practices), does not expressly impose civil liability sufficient to abrogate their general immunity under the exception in R.C. 2744.02(B)(5), and even if it did, there was no evidence of discrimination sufficient to withstand summary judgment. They further allege that even if an exception sufficient to abrogate their immunity were proven, immunity was reinstated because they had defenses per R.C. 2744.03(A)(3) and (A)(5) under the third tier analysis. Accordingly, they argue that the trial court erred in concluding that neither R.C. 2744.03(A)(3) nor (5) operated to restore their immunity.

{¶7} Appellees argue that our decision in *M.J. I* is the law of the case as to the tier two exceptions to immunity and cannot be re-argued by Appellants. The law of the case doctrine "provides that a decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings at both the trial and reviewing levels." *Nolan v.*

*Nolan,* 11 Ohio St.3d 1, 3 (1984). Relying on this doctrine, Appellees argue that because this appeal comes to us following remand from *M.J. I* on the limited issue of the tier three defenses, Appellants are restricted to arguments that pertain solely to that issue. In addition, Appellees maintain that the tier two issue was not properly preserved for further argument because Appellants' notice of appeal did not include the trial court's order denying summary judgment on Appellees' discrimination claims, the order appealed in *M.J. I*, and therefore, they did not provide proper notice in accordance with App.R. 3(D) that they intended to appeal that order.

{¶8} Appellants counter-argue that *M.J. I* is not the law of the case because we did not definitively rule on the trial court's decision regarding the tier two exceptions to immunity, determining instead that the issue was not ripe for appellate review until the trial court completed the entire political subdivision immunity analysis by ruling on the tier three defenses. Based on that contention, Appellants argue that they are not foreclosed from challenging the trial court's decision denying summary judgment on Appellees' discrimination claims under the tier two immunity exceptions. Appellants further argue that no exception to immunity applies in the first instance and that the trial court improperly denied summary judgment on Appellees' discrimination claims.

{¶9} We agree with Appellants on this point. Our decision in *M.J. I* is not the law of the case and their arguments regarding the tier two immunity exceptions were properly preserved. As this Court has previously stated, Appellants "are limited to raising issues that pertain to the action of the trial court following remand *or assignments of error that they raised in the prior appeal but were not addressed by this Court because they were moot*." (Emphasis added.) *In re K.T.* 2017-Ohio-2638, ¶ 11 (9th Dist.). In *M.J. I,* Appellants raised this issue as an assignment of error in their merit briefs, maintaining that no exception to immunity existed. We concluded that the

second tier issue was moot and declined to address it as premature. *M.J. I* at ¶ 14 (9th Dist.). Thus, because we declined to address Appellants' arguments on the second tier due to mootness in *M.J. I*, Appellants are not limited here to raising only the issues pertaining to the trial court's decision on remand regarding the third tier. *In re K.T.* at ¶ 11. In the instant appeal, Appellants not only challenge the trial court's ruling on the defenses under R.C. 2744.03, but have also renewed their tier two immunity exception arguments, thus fully preserving the issue and placing it squarely before us.

{¶10} In its analysis of the second tier, the trial court found that of the five exceptions to immunity set forth in R.C. 2744.02(B)(1) through (5), only the exception in (B)(5) potentially applied ("when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code[.]. . ."). The court further found that there was a genuine issue of material fact as to whether Appellees' second and third causes of action, unlawful discrimination practices based upon race and disability under R.C. 4112.02(G), provided a potential basis for Appellants' express liability under R.C. 2744.02(B)(5), and denied summary judgment on that issue. In arriving at its decision, the trial court found as an initial matter that the definition of "persons" in R.C. 4112.01(A)(1) includes "the 'state and all political subdivisions[,]'" and therefore, because Appellants are political subdivisions, they are "persons" who can be held liable for discrimination.

{¶11} "[T]he plain language of R.C. 2744.02(B)(5) requires the statute to 'expressly impose' civil liability upon the political subdivision." *Alicea v. Lorain*, 2018-Ohio-2538, ¶ 13 (9th Dist.). "It is not sufficient that a statute imposes civil liability in general for R.C. 2744.02(B)(5) to apply. . . ." *Bonkoski v. Lorain Cty.*, 2018-Ohio-2540, ¶ 9 (9th Dist.). The term "expressly" in R.C. 2744.02(B)(5) means "'in direct or unmistakable terms; in an express manner: *explicitly, definitely, directly.*'" (Emphasis in original.) *Butler v. Jordan,* 92 Ohio St.3d 354, 357 (2001),

quoting *Webster's Third New International Dictionary* (1986). "Moreover, the liability must be expressly imposed 'by a section of the Revised Code.'" *Bonkoski* at ¶ 9, quoting R.C. 2744.02(B)(5).

{¶12} Appellees' discrimination claims are based on alleged violations of R.C. 4112.02(G). R.C. 4112.02(G) provides that:

It is an unlawful discriminatory practice

. . .

For any *proprietor or any employee, keeper, or manager of a place of public accommodation* to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

(Emphasis added.) R.C. 4112.01(A)(9) defines "place of public accommodation" as:

any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place for the sale of merchandise, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public.

Appellants argue that R.C. 4112.02(G) does not expressly impose civil liability sufficient to abrogate their immunity under the exception in R.C. 2744.02(B)(5) because R.C. 4112.02(G) expressly imposes liability *only* on "proprietors" of a place of public accommodation or "employees, keepers, or managers" of "a place of accommodation," neither of which includes Appellants. First, the issue of whether Appellants' employees are liable is not before us in this appeal as we have previously ruled that a genuine issue of material fact remains as to their immunity because reasonable minds could differ as to whether their acts or omissions were done in a reckless manner. *M.J. I* at ¶ 21 (9th Dist.). Second, addressing the trial court's reasoning, Appellants acknowledge that schools are "political subdivisions" and that a "political subdivision" is included in the definition of "person" in R.C. 4112.01(A)(1). However, they emphasize that

R.C. 4112.02(G) does not use either of those terms to describe who is prohibited from engaging in discriminatory practices, either through the definition of "proprietor" or "place of public accommodation."

{¶13} Appellees argue that R.C. 4112.99(A), the penalty provision of the statute, expressly imposes liability on a political subdivision for violations of R.C. 4112.02(G) because it states that *"[w]hoever* violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. . . ." (Emphasis added.). They argue that the term "whoever" is synonymous with the term "person," which includes "political subdivisions" per R.C. 4112.01(A)(1).

{¶14} For the reasons that follow, we agree with Appellants that there is no applicable immunity exception in this case. Ohio courts have helped differentiate when a statute expressly imposes liability on a political subdivision.

{¶15} In *Cramer v. Auglaize Acres*, 2007-Ohio-1946, the administrator of the estate of a deceased resident of a county nursing home brought suit against the nursing home, nurses, and county commissioners under R.C. 3721.17(I)(1)(a), the Nursing Home Patients' Bill of Rights as it existed at that time, which provided that any nursing home resident whose rights under the act were violated had a cause of action against "any person or home" committing the violation. In concluding that the county nursing home was not immune from liability, the Ohio Supreme Court noted that for purposes of the statute, the definition of "home" in R.C. 3721.01 included "'county homes' operated pursuant to R.C. Chapter 5155 [County Homes][.] . ." *Id*. at ¶ 28. The *Cramer* Court held that "[t]he General Assembly specifically included county homes operated pursuant to R.C. Chapter 5155 within its definition of the 'homes' that can be sued and thus specifically imposed liability on county-operated homes for any violation of the Patients' Bill of Rights." *Id.*

at ¶ 30.  However, with respect to the nurses sued in *Cramer,* the Supreme Court noted that the legislature did not define "person" for purposes of the Patients' Bill of Rights. *Id*. at ¶ 32. The Supreme Court found that the term "person" in R.C. 3721.17(I)(1) was "too general to expressly impose liability on an employee of a political subdivision." *Id*.  As a result, the employees of the county nursing home were entitled to immunity. Thus, under *Cramer*, a political subdivision or its employees can be expressly liable only if a specific statute explicitly uses a term that clearly includes the political subdivision or its employes in a separate statutory definition in the same section of the Revised Code.

{¶16}  Relying on *Cramer*, in *O'Toole v. Denihan,* 2008-Ohio-2574, the Ohio Supreme Court held that R.C. 2919.22 (Endangering children), which imposed criminal liability upon a "person," did not expressly impose liability on the defendant-public children services agency's employees. *Id*. at ¶ 67. R.C. 2919.22(A) read in pertinent part that "'[n]o *person. . .* shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.'" (Emphasis added.) *Id*. at ¶ 63. "R.C.2919.22 use[d] the word 'person' without any reference to political subdivisions or their employees." *Id*. at ¶ 67.  Most salient was the Court's rationale, that "if the General Assembly had wanted to specifically include employees of public children services agencies among the list of people potentially liable, it could have done so. Without any express imposition of liability, appellants are entitled to immunity." *Id*.

{¶17}  Thus, in *Cramer* and *O'Toole,* the Ohio Supreme Court made it clear that express liability means that the specific governmental person or entity that can be sued for a violation of the statute at issue must be specifically listed in the statute.  Otherwise, a political subdivision retains its immunity.

{¶18} In *Callaway v. Akron Police Dept*, 2021-Ohio-4412 (9th Dist.), a bystander who was bitten by a police dog in pursuit of a suspect, brought a negligence action against a police officer, the police department, and the city of Akron ("City"). *Id*. at ¶ 4. In response to the City's assertion that it was immune from suit, the plaintiff argued that an exception to that immunity applied because R.C. 955.28 expressly imposed liability upon the City. R.C. 955.28(B) provided, in relevant part, that "[t]he owner, keeper, or harborer of a dog is liable in damages for any injury . . . that is caused by the dog[.]. . ." *Id*. at ¶ 14. In affirming the trial court's decision that R.C. 955.28(B) is a general liability statute and did not impose express liability on the City, we said:

> The statute's plain language *makes no mention of political subdivisions*. It imposes liability upon any owner, keeper, or harborer of a dog. Thus, *the statute is one of general application and does not expressly impose civil liability upon political subdivisions . . . .* Because the statute does not expressly impose civil liability upon the City, the trial court correctly determined that the exception to immunity outlined in R.C. 2744.02(B)(5) was inapplicable.

(Internal citations and quotations omitted.)(Emphasis added.) *Id*. at ¶ 15.

{¶19} In *Horen v. Bd. of Edn. of Toledo Pub. Schools,* 2010-Ohio-3631 (6th Dist.), the parents of a medically fragile student brought suit against the school district, including a claim under R.C. 4112.02(G) as in the instant case. The Sixth District held that "a reading of the entire statute reveals that it does not expressly impose civil liability on a political subdivision for a violation of R.C. 4112.02(G). Instead, R.C. 4112.05 sets forth the procedure to be followed in charging such persons with such unlawful discriminatory practices." *Id*. at ¶ 41.

{¶20} Viewing the present appeal under the lens of Ohio case law construing the meaning of "express liability" under R.C. 2744.02(B)(5), we conclude that there are no "direct or unmistakable terms" in R.C. 4112.01 that make Appellants liable as a "proprietor" of a "place of public accommodation." *Butler,* 92 Ohio St.3d at 357. The term "proprietor" in R.C. 4112.02(G)

is not defined at all, and the definition of "place of public accommodation" in R.C. 4112.01(A)(9) does not list any terms that include Appellants either expressly or even implicitly.

{¶21} Appellees rely on the Ohio Supreme Court case, *Campbell v. Burton*, 92 Ohio St.3d 336 (2001)*,* to support their position that immunity is expressly waived in this statute. However, *Campbell* is distinguishable from the present case. In *Campbell*, a student brought an action for damages against the school board, school superintendent, and the school's mediation coordinator, alleging a violation of the statutory duty under R.C. 2151.421 to report known or suspected alleged child abuse. The question before the Court was whether, for purposes of the immunity exceptions, R.C. 2151.421 expressly imposes liability on political subdivisions and their employees for failure to report child abuse. *Id.* at 339. The *Campbell* Court answered that question in the affirmative. *Id.*

{¶22} In arriving at its conclusion, the *Campbell* Court looked to the terms of R.C. 2151.421(A)(1)(a), which stated in relevant part that "[n]o *person*. . . shall fail to immediately report that knowledge or suspicion [of abuse or neglect of a child][.] . . ." (Emphasis added.) *Id*. at 340-341. The Court noted that the definition of "person" required to report injury was contained in the next paragraph of the statute, R.C. 2151.421(A)(1)(b), and included "'school teacher; school employee; school authority' and other professionals" in the list of specific people and agencies mandated to report neglect or abuse. *Id.* at 341. The Court then turned to the penalty provision of the statute, R.C. 2151.99, which stated that "'[*w]hoever* violates [R.C. 2151.421(A)(1)] is guilty of a misdemeanor of the fourth degree,'" concluding that "[t]hus, anyone who is required by R.C. 2151.421 to report known or suspected child abuse but fails to report such abuse is guilty of a fourth-degree misdemeanor." (Emphasis added.) *Id.* Thus, the *Campbell* Court interpreted the term "person" as anyone listed in the statute that had a duty to report but failed to do so. The Court

ultimately concluded that because the school was included in the list of those that had a duty to report, "pursuant to R.C 2744.02(B)(5), [the school] is not immune from liability." *Id.* at 343.

{¶23} Here, following the reasoning of *Campbell*, the language in R.C. 4112.99 stating "whoever violates this chapter" relates back to the express term "proprietor" of a place of public accommodation in R.C. 4112.02(G), the provision of the anti-discrimination statute stating who is liable for discrimination. Contrary to the trial court's finding, the term "whoever" does not mean a "person," nor by extension, "all state and political subdivisions." As previously noted, unlike the situation in *Campbell*, here the term "proprietor" of a place of public accommodation is not defined by the statute to include either a school board or school district or a "person." Thus, *Campbell* does not support the abrogation of Appellants' immunity in the instant matter.

{¶24} Based on the foregoing, we agree with Appellants. R.C. 4112.02(G) imposes express liability only on a "proprietor" of a place of public accommodation, and that term does not expressly include the school board or school district. R.C. 4112.01(A)(9) does not include "schools," "persons" or "political subdivisions" as "proprietors" or "places of public accommodation." The statute does not define the term "proprietor." Even if we were to accept Appellees' argument that the general term "whoever" in R.C. 4112.99(A) means "persons," "persons" are not expressly subject to liability under R.C. 4112.02(G). In sum, there is no language in R.C. 4112.02(G) that expressly imposes liability on Appellants under the definition of "express liability" as it has been construed under Ohio case law. Therefore, since Appellants are not expressly liable under R.C. 4112.02(G), the exception to the abrogation of immunity under R.C. 2744.03(B)(5) is not applicable. Since the exception does not apply, Appellants' general immunity remains intact under the first tier. Accordingly, the trial court erred by failing to grant summary judgment in Appellants' favor as a matter of law on this issue.

**{¶25}** Given our conclusion that summary judgment should have been granted in Appellants' favor under the second tier exceptions, no further analysis is necessary as to the third tier defenses under R.C. 2744.03(A). Because there is no exception to Appellants' general immunity, we are compelled to find their general immunity was never abrogated under the second tier of political subdivision immunity. Therefore, the issue of the third tier defenses is moot.

**{¶26}** Undoubtedly, our conclusion in this case results in an outcome that may appear harsh and unfair because it means that political subdivisions are not liable for discrimination under R.C. 4112.02(G). However, if Appellees choose to seek further redress, they must prevail upon the legislature to address this omission in the language of the statute.

III.

**{¶27}** Based on the foregoing, Appellants' assignment of error is sustained, and the judgment of the Summit County Court of Common Pleas is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

SCOT STEVENSON
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTS.

APPEARANCES:

MARKUS E. APELIS, MATTHEW A. SMARTNICK, and RICHARD C.O. REZIE, Attorneys at Law, for Appellants.

EDWARD L. GILBERT, Attorney at Law, for Appellees.