JOURNAL ENTRY and OPINION[1]
[1] This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
{¶ 1} Plaintiff-appellant Jane Doe appeals the trial court's granting of summary judgment in favor of defendants-appellees Judy McGill and Richard Sattler. We find merit to the appeal, in part, and reverse and remand for further proceedings.
 {¶ 2} On October 25, 1999, Doe filed suit against several defendants relating to inappropriate sexual conduct by her high school teacher, James T. Roman, and the alleged failure of responsible parties who had knowledge of the abuse to prevent or report the[1].
 {¶ 3} Pertinent to the instant appeal, Doe alleged several counts against defendants-appellees, the school principal Richard Sattler and the school social worker Judy McGill. Doe alleged that Sattler and McGill breached their duty to report and prevent child abuse pursuant to R.C.2151.421 and 2151.031; that their conduct constituted intentional infliction of emotional distress; and they prevented her from exercising her rights pursuant to the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983. Doe also alleged several additional counts against Sattler for negligent retention and supervision of Doe. McGill and Sattler were sued in both their official and individual capacities.
 {¶ 4} Discovery conducted by the parties revealed the following:
 {¶ 5} Doe was a student in James T. Roman's marketing class during the fall of 1998. At the time of the abuse, she was a senior. She claimed there were about four or five incidents of sexual misconduct by Roman. The first incident, according to Doe, occurred on November 2, 1998, when Roman approached her before school at the "Cookie Shop" concession stand and kissed her on the lips and touched her on the buttocks. At that time, Doe claimed that he also asked her why she did not come to his house that weekend to strip for him while his wife was away. Doe admitted that she had previously told friends, within the hearing of Roman, that she wanted to be a stripper.
 {¶ 6} Doe alleged that Roman kissed her in his car on November 3. Eight days later, while on a school trip with Roman, he coaxed her to lift her skirt and show her underwear, and he attempted to be alone with her during the field trip. On November 16, she met him at a truck stop and drove with him to a secluded spot where he kissed her. Another time, she was jogging and he drove by in his car, picked her up, and they kissed again. The last incident occurred on November 23, 1998, when Roman took her to his home where he kissed her and touched her. He requested that she perform oral sex, but she refused.
 {¶ 7} Sattler testified in his deposition that he first received information about Doe and Roman on November 9, 1998, through a phone call from an assistant high school principal in Dover, informing him that Dover's volleyball coach was told by a student that "something improper was occurring between Doe and Roman." The next day, Sattler called Doe into his office and questioned her about the rumors. Sattler admitted that he was a good friend of Roman's and that he told Doe this when he met with her. According to Sattler, Doe denied that anything inappropriate was taking place.
 {¶ 8} That same day, Sattler also met with Roman, who admitted that he kissed Doe on the forehead and hugged her in a non-sexual manner. Sattler warned Roman that he should be careful about any comment he made in front of the students because it could be misunderstood. Based on these interviews, Sattler concluded that nothing inappropriate was occurring and therefore he did not contact the school social worker at this time.
 {¶ 9} The day after this meeting, Sattler allowed Roman to take Doe and three other students to Columbus for the day for a school-related trip. It was on this trip that Doe contended Roman coaxed her into lifting up her skirt and attempted to separate her from the group to spend time alone with him.
 {¶ 10} On November 25, 1998, the day before Thanksgiving vacation, Sattler was approached by McGill, who had been told by the school nurse that there were rumors of an inappropriate relationship between Roman and Doe. In response, when school reconvened, Sattler again interviewed Roman, who denied that anything inappropriate occurred. McGill interviewed Doe, who also denied any improper conduct.
 {¶ 11} On Saturday, December 5, 1998, Doe's father called Sattler at home and told him that his younger daughter had told him something was "going on" between Roman and Doe. Roman again denied any inappropriate contact with Doe when Sattler confronted him. However, in spite of Roman's denial, Sattler testified that he then began to wonder if something inappropriate was in fact taking place.
 {¶ 12} On the next school day, December 7, Sattler informed the superintendent of the school district, Douglas Spade, about the rumors. Spade immediately requested a meeting with Roman to discuss the matter. Sattler was present at the meeting and noticed that Roman appeared very nervous and anxious. Roman again denied any wrongdoing, but Spade advised him that the matter would be investigated further.
 {¶ 13} After this meeting, Spade ordered McGill to call Child Services, which McGill contends she did. Child Services, however, does not have any documentation regarding the school's reporting the incident until December 11, 1998. According to McGill, Child Services was reluctant to look into the matter because Doe was nearly eighteen years old.
 {¶ 14} On December 14, 1998, McGill went to Doe's residence because Doe was ready to give a statement. Doe admitted to McGill and the superintendent that Roman had engaged in sexual conduct with her. Roman was then immediately suspended.
 {¶ 15} On April 12, 2001, the trial court entered separate rulings for each of the defendants regarding the summary judgment.[2]. Regarding McGill, the trial court entered summary judgment in favor of McGill regarding Doe's allegations of individual liability for her failure to report the matter to Child Services pursuant to R.C. 2151.421
and the claim that McGill violated 42 U.S.C. § 1983. The trial court found that there were material issues in dispute regarding the remaining claims against McGill.
 {¶ 16} Regarding Richard Sattler, the trial court granted summary judgment in Sattler's favor regarding Doe's claim that Sattler was individually liable for his failure to report the matter to Child Services pursuant to R.C. 2151.421. The trial court also granted summary judgment in Sattler's favor regarding Doe's claims that Sattler was individually liable for intentional infliction of emotional distress, for the 42 U.S.C. § 1983 violations, and for the negligent retention or supervision of Roman.
 {¶ 17} Doe raises four assignments of error on appeal.
 Failure to Report Pursuant to R.C. 2151.421 {¶ 18} In her first and fourth assignments of error, Doe argues the trial court erred in granting summary judgment in favor of Sattler and McGill in their individual capacities on the claim alleging failure to report child abuse pursuant to R.C. 2151.421 and 2744.03(A)(6).
 {¶ 19} Before addressing the merits of Doe's claims, we must first distinguish the difference between an individual-capacity and official-capacity suit. As the court in Peoples Rights Org. v. Betty D. Montgomery, Ohio Attorney General (2001), 142 Ohio App.3d 443, 483, explained:
 {¶ 20} "Personal-capacity suits, sometimes characterized as individual-capacity suits, seek to impose individual liability upon a government officer for actions taken under the color of state law. Hafer v. Melo (1991), 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.E.2d 301, 309-310. By contrast, an official-capacity suit, wherein a government officer is sued in her official capacity, `generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.' Id., quoting Kentucky v. Graham (1985), 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.E.2d 114, 121. For this reason, official-capacity suits are treated as suits against the state itself. Id. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121-122. * * * `while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.' Graham, 473 U.S. 166, 105 S.Ct. at 3105."
 {¶ 21} R.C. 2151.421 contemplates individual-capacity suits because pursuant to R.C. 2151.99 whoever violates R.C. 2151.421(A)(1) is guilty of a fourth degree misdemeanor for the failure to report suspected abuse. Obviously, the government entity cannot be found guilty of a fourth degree misdemeanor and serve a jail sentence.
 {¶ 22} We now address the merits of Doe's appeal.
 {¶ 23} Appellate review of summary judgments is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585. The Ohio Supreme Court stated the appropriate test in Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370, as follows:
 {¶ 24} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."
 {¶ 25} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 26} Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of the following applies:
 {¶ 27} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 28} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 29} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 30} R.C. 2151.421 states in pertinent part:
 {¶ 31} "No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer * * *."
 {¶ 32} R.C. 2151.421(A)(1)(b) lists "school teacher, school employee, school authority" and other professionals as persons required to report any known or suspected abuse or neglect.
 {¶ 33} While this case was pending, the Ohio Supreme Court decided Campbell v. Burton, 92 Ohio St.3d 336, 2001-Ohio-206, and explicitly overruled Reed v. Perry Cty. Children's Serv. (June 29, 1993), Fifth Dist. No. CA-429, upon which the lower court relied in reaching its decision. In Campbell, the Ohio Supreme Court held at paragraph three of the syllabus:
 {¶ 34} "Pursuant to R.C. 2744.03(A)(6)(c), an employee of a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421."
 {¶ 35} Therefore, based on the above authority, R.C. 2151.421
expressly imposes liability upon persons who fail to report child abuse. As such, Sattler and McGill's actions and omissions fall within the exception to immunity pursuant to R.C. 2744.03(A)(6)(c). The trial court, therefore, erred in finding that McGill and Sattler could not be held individually liable for their failure to report suspected child abuse.
 {¶ 36} Although we find the trial court erred in finding that McGill and Sattler were immune for their failure to report the suspected abuse, the issue of whether they should have reported the incidents prior to Doe's admissions is a question upon which reasonable minds could differ and therefore not appropriate for summary judgment.
 {¶ 37} Doe's first and fourth assignment of errors are sustained.
 Sattler's Intentional Infliction of Emotional Distress {¶ 38} In her second assignment of error, Doe contends that the trial court erred by granting summary judgment for Sattler in his individual capacity on Doe's claim of intentional infliction of emotional distress.
 {¶ 39} In order to establish a claim of intentional infliction of emotional distress, Doe must show (1) that Sattler either intended to cause emotional distress or knew or should have known that by not taking action it would result in serious emotional distress to her; (2) that Sattler's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that Sattler's actions were the proximate cause of Doe's psychic injury; and (4) that the mental anguish suffered by Doe is serious and of a nature that no reasonable man could be expected to endure it. Burkes v. Stidham (1995),107 Ohio App.3d 363, 375.
 {¶ 40} Doe testified in her deposition that on November 7, 1998, when Sattler first questioned her about Roman, he told her that he was "good friends" with Roman and that he did not want him to get into trouble. Although Sattler claimed he failed to take any further action at that time because he thought Roman and Doe were credible in denying anything inappropriate was occurring, there is an implication that perhaps he did not take action because of his friendship with Roman. The next day, with Sattler's knowledge, Roman was permitted to take Doe and several other students to Columbus for the day, where Roman continued his sexual abuse. Several other occasions of abuse occurred prior to Children's Services being called.
 {¶ 41} Given Sattler's position as principal, with a duty to look out for the welfare of the students, the fact that he simply accepted the parties' denials without conducting further investigation or notifying the school social worker could be deemed as "outrageous conduct." Given the situation, whether the parties would have admitted to any wrongdoing and whether Sattler should have realized this when questioning the individuals and accepting their responses is an issue of dispute.
 {¶ 42} According to Doe, as a result of feeling that the school was trying to cover up for Roman, she has a hard time "trusting anyone." She also claimed that the way the situation was handled made her feel like it was her fault. She received counseling until she entered college.
 {¶ 43} Based on the above, there was sufficient evidence presented from which reasonable minds could reach different conclusions regarding whether Sattler's conduct was extreme and outrageous and whether Doe suffered severe emotional distress as a consequence. Accordingly, Doe's second assignment of error is sustained.
 Sattler's Negligent Supervision and Retention of Roman {¶ 44} In her third assignment of error, Doe contends that the trial court erred in finding Sattler was not individually liable for the negligent retention and supervision of Roman.
 {¶ 45} A review of the record indicates sufficient evidence upon which reasonable minds could conclude that Sattler was negligent in supervising Roman. After allegations of the improper conduct by Roman towards Doe were known to Sattler, he permitted Sattler to drive Doe and several other classmates to Columbus the next day. According to Doe, during this trip Roman attempted to coax her away from the group to be alone with him, and on the way home, encouraged her to lift her skirt and show him her underwear. Sattler also permitted Doe to remain in the class which Roman taught without conducting any further inquiry or closely monitoring the conduct between the parties.
 {¶ 46} Pursuant to R.C. 2744.03(A)(6)(b), an employee of a political subdivision does not have immunity from liability if "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Sattler's permitting the Columbus trip with Doe can arguably be a "reckless" decision on Sattler's part as well as his failure to closely supervise Roman until the matter was further investigated.
 {¶ 47} Regarding Doe's claim that Sattler negligently retained Roman, there was no evidence presented that Sattler had the authority to hire or fire Roman. Pursuant to R.C. 3319.07 and 3319.16, only the school board can hire and fire teachers. Therefore, the trial court correctly granted summary judgment in favor of Sattler on Doe's claim that Sattler negligently retained Roman.
 {¶ 48} Doe's third assignment of error is sustained in part.
 McGill's Intentional Infliction of Emotional Distress {¶ 49} Doe voluntarily withdrew this assignment of error after realizing the trial court did not grant summary judgment as to McGill's liability for intentional infliction of emotional distress.
 {¶ 50} Judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings.
 {¶ 51} This cause is affirmed in part and reversed in part.
 {¶ 52} This court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant and appellee each pay one-half of the costs herein.
 {¶ 53} It is ordered that a special mandate issue out of this court directing the Tuscarawas County Court of Common Pleas to carry this judgment into execution.
 {¶ 54} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J.* and KENNETH A. ROCCO, J.* CONCUR
TOPIC: FAILURE TO REPORT CHILD ABUSE.
 __________________________________________ COLLEEN CONWAY COONEY*, JUDGE
* Judges of the Eighth District Court of Appeals, sitting by assignment.
[1] . . the defendants-appellees, Doe sued the teacher, James T.Roman, Douglas Spade, the school superintendent, and the New PhiladelphiaBoard of Education and its board members. For purposes of this appeal, wewill address only Doe's claims against McGill and Sattler.
[2] . . . 6, 2001, the trial court entered nunc pro tunc entries in allthe summary judgment rulings to remedy an error in the opening paragraphof each of the summary judgment rulings.