JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, John O'Toole, personal representative and administrator for the estate of Sydney Sawyer, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand to the lower court.
 I. {¶ 2} According to the case, appellant brought this wrongful death and survival action as the personal representative and administrator for the estate of Sydney Sawyer ("Sydney") in the Cuyahoga County Court of Common Pleas. Appellant brought his claim against appellees, the Cuyahoga County Department of Children and Family Services ("DCFS"), its executive director, William Denihan ("Denihan"), supervisor Tallis George-Munro ("Munro"), social worker Kamesha Duncan ("Duncan"), and John Doe county policymakers and employees. The complaint asserted seven substantive claims for relief, including: Count 1 — failure to report suspected or known child abuse of Sydney to law enforcement; Count 2 — negligently failing to report suspected child abuse; Count 3 — recklessly creating a substantial risk to the health and safety of Sydney; Count 4 — negligently performing job duties; Count 5 — breaching special duty of care; Count 6 — reckless implementation of a risk assessment protocol used for investigation of child abuse and to investigate Sydney's case; Count 7 — recklessness in investigating the known or suspected child abuse of Sydney; and Count 8 — intentional or negligent conduct in the performance of duties. The complaint also challenged the constitutionality of R.C. Chapter 2744 to the extent that it may extend statutory immunity to appellees.[1] In compliance with R.C. 2721.12, a copy of the complaint was served upon the Ohio Attorney General on March 4, 2002.
 {¶ 3} On November 27, 2002, defendants DCFS, Denihan, and Duncan filed a motion for summary judgment asserting that they were immune from liability pursuant to R.C. Chapter 2744 on all claims. On February 13, 2003 and February 25, 2003, appellant filed briefs in opposition to the respective motions. The trial court denied the defendants' motions. The trial court provided the following:
"[t]he court finds genuine issues of material fact remain to be tried as to whether defendants have violated any duty imposed by law that would defeat sovereign immunity pursuant to R.C. 2744.02
and 2744.03, e.g., Campbell v. Burton (2001),92 Ohio St.3d 336, at paragraphs 2 and 3 of the syllabus; see also, R.C.2744.02(B)(5), 2744.03(A)(6)(c). The court reserves judgment on this issue until after all the evidence has been presented at trial. The motions are therefore denied."[2]
 {¶ 4} On April 25, 2005, defendants DCFS, Denihan and Duncan filed a renewed motion for summary judgment, again asserting statutory immunity under R.C. 2744.02 and 2744.03.[3] On April 27, 2005, defendant Munro filed a motion for summary judgment also asserting immunity on all claims. Appellant filed its combined brief in opposition to defendants' motions for summary judgment on May 31, 2005. Appellant argued that the exceptions to immunity in R.C. 2744.03(A)(6)(c) and (b) (as to its employees), defeat immunity, and R.C. 2744.02 and 2744.03 are unconstitutional as applied to appellant's claims. By journal entry dated November 16, 2005, the trial court reversed its earlier ruling and granted defendants' motions for summary judgment in their entirety. The trial court provided the following:
"[t]he court finds that plaintiff has failed to present genuine issues of material fact for trial affirmatively refuting the binding case law of Marshall v. Montgomery County ChildrenServices Board, 92 Ohio St.3d 348, 2001-Ohio-209. Thus, the motions are well-taken and granted."
 {¶ 5} Appellant then appealed the trial court's decision to this court on December 14, 2005.
 {¶ 6} According to the facts, Sydney was pronounced dead at Rainbow Babies and Children's Hospital in Cleveland, Ohio on April 28, 2000. Sydney was a 4-year-old girl who had been physically abused and subsequently died from her injuries. The social workers at the hospital notified the police and the DCFS. Deputy Cuyahoga County Coroner and Forensic Pathologist Joseph Felo, D.O., performed the autopsy. Dr. Felo determined the cause of death to be blunt impacts to the child's trunk, causing perforation of the small intestine and acute peritonitis. It is Dr. Felo's opinion, as to a reasonable degree of medical certainty, that the fatal injuries occurred on April 27, 2000.[4]
 {¶ 7} Appellee DCFS is the public children services agency within the Cuyahoga County Department of Human Services. DCFS is charged with investigating allegations of child abuse and neglect, and providing care, protection and support to abused and neglected children. Duncan began her employment as a social worker with DCFS on October 25, 1999. She had no prior experience as a social worker and was new to the field. Duncan was "in training" until January 2000, and the Sydney Sawyer case was one of her first assignments. Her direct supervisor was Munro who was responsible for supervising five to six social workers and who reported directly to the intake unit chief, Elsa Popchak. Popchak reported to deputy director Zuma Jones, who, in turn, reported to Denihan.
 II. {¶ 8} Appellant's first assignment of error states the following: "The trial court erred in granting summary judgment in favor of appellees DCFS, Denihan, Munro and Duncan because it improperly applied Marshall v. Montgomery County ChildrenServices Board (2001), 92 Ohio St.3d 348, 2001-Ohio-209, to appellant's claims for violation of the statutory duty to report known or suspected child abuse, child endangering, and recklessness."
 {¶ 9} Appellant's second assignment of error states the following: "The trial court erred in granting summary judgment on all of appellant's claims as Ohio Revised Code Chapter 2744, as applied, violates the Ohio Constitution."
 III. {¶ 10} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1; Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 12} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 13} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 14} We find that genuine issues of material fact remain concerning the Cleveland Police Department records. Appellant asserts that the evidence in the record reflects that no form was ever faxed to the police in Sydney's case. Appellant declares that "there is no record of any such report being received by the Cleveland Police Department."[5] Appellant states that the hotline form in the Sawyer case clearly reflects that the police had not been contacted and specifically stated that a "call needs to be made" to the police. Appellant further states that, not only did Munro or Duncan fail to make the telephonic or personal report to the police required by R.C. 2151.421(C), but they failed to make any report whatsoever at any time prior to Sydney's death, nearly a month after they knew of her abuse.
 {¶ 15} In contrast, appellees argue that the undisputed facts establish that appellees did report Sydney's case referral to the police. Appellees point to Munro's testimony that the DCFS' case referral file indicates that the police were notified of Sydney's case referral. Munro testified that when a complaint is received by the hotline, the hotline worker has a carbon copy form containing relevant complaint information that is automatically faxed to the Cleveland Police Department.
 {¶ 16} In addition to the above, we find that genuine issues of material fact remain concerning the investigation of Denihan and the DCFS. Appellees created a substantial risk to Sydney's health and safety by violation of their legal duties owed to her. Specifically, they were reckless in assigning an inexperienced worker to the intake unit without proper supervision; instituting structured decision making ("SDM"), a safety and risk assessment model, without worker demonstration of knowledge, skills and clinical judgment necessary to implement the new process; allowing Munro to continue in his supervisor position without demonstrating supervisory knowledge and skills without demonstration of the knowledge and skills to implement SDM; not providing independent medical examiners to determine the nature of the physical condition of children when abuse is suspected; not providing a quality controls system to ensure that in Priority 1 cases child safety has been determined; and not providing a mechanism to determine if SDM was being properly implemented.
 {¶ 17} Additional evidence of recklessness in the record includes the fact that the social worker returned the four-year-old child to the mother after observing evidence of severe injuries; for example, bruising to the face, whip marks on the child's back, and burn marks on her palms.
 {¶ 18} The Ohio Supreme Court defined "reckless" as:
"[T]he conduct was committed knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."
Cater v. City of Cleveland, 83 Ohio St.3d 24, 33,1998-Ohio-421.
 {¶ 19} Moreover, we note that we find this case to be fact-specific, primarily due to the fact that the agency already knew that someone had injured this child and still returned the child to her mother, even though she had a long history of abusing her children.
 {¶ 20} In addition to the genuine issues of material fact remaining in the case at bar, we find Marshall v. MontgomeryCounty Children Services Board to be distinguishable from the case at bar.
 {¶ 21} In Marshall, the mother, Rozanne Perkins, "had a history of abusing her children," and was dependent on alcohol and drugs. Perkins had a substantial history of abusing her children beginning in 1985. From 1985 to 1995 Perkins had four other children who were taken away from her. In addition, the Dayton Police Department arrested Perkins for domestic violence. She had attempted to stab her boyfriend, the baby's father, while she was driving her car with her baby in the backseat. In the case at bar, however, the mother did not have a similar history of domestic violence, and the child was beaten to death by the boyfriend and not the mother. Moreover, the case at bar lacks the significant history of violence, neglect and abandonment to the children by the mother in Marshall. Accordingly, we findMarshall to be distinguishable from the case at bar.
 {¶ 22} Assuming arguendo that the facts in the case at bar were not distinguishable from Marshall, the case is still misapplied. Marshall only dealt with the failure to investigate child abuse claims. Appellant's claims are not based solely on negligence in the investigation of the abuse of Sydney. The lower court disregarded appellant's claims for appellees' failure to report the known or suspected abuse of Sydney to law enforcement, Count 1; recklessly creating a substantial risk to the health and safety of Sydney by violating their duties of care and protection owed to her, Counts 3 and 6; and the recklessness of Munro and Duncan in investigating the abuse of Sydney, Count 7.
 {¶ 23} The express issue in Marshall dealt specifically with whether R.C. 2151.421 imposes liability for a negligent failure to investigate for purposes of the exceptions to immunity in R.C. 2744.02(B)(5) as to a political subdivision and R.C.2744.03(A)(6)(c) as to its employees. The Ohio Supreme Court found the result troubling but was "confined to review the law based upon the issues presented in this appeal." Id. at 352. The Ohio Supreme Court was not presented with a claim that CSB employees recklessly failed to investigate. The Ohio Supreme Court's decision in Marshall does not govern appellant's claims for appellees' failure to report known or suspected child abuse to law enforcement, or for appellees' reckless creation of a substantial risk to the health or safety of Sydney.
 {¶ 24} Appellant argues in his first assignment of error that the trial court erroneously granted summary judgment. We find merit in appellant's argument.
 {¶ 25} The conflicting evidence regarding the Cleveland Police Department records demonstrates substantial dispute as to genuine issues of material fact. There are also genuine issues of material fact regarding Denihan and Duncan. Moreover, we findMarshall to be distinguishable from the case at bar.
 {¶ 26} Appellant's first assignment of error is sustained.
 {¶ 27} Based on the disposition of appellant's first assignment of error, appellant's remaining assignment of error is moot. App.R. 12 (A)(1)(c).
Judgment reversed and remanded.
It is ordered that appellant recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Mary Eileen Kilbane, J., and Patricia Ann Blackmon, J., concur.
[1] R.C. 2744.02. Classification of functions of political subdivisions; liability; exceptions.
"(A) (1) * * *, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. * * *
(B) * * *, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: * * *
(5) * * *, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term `shall' in a provision pertaining to a political subdivision."
[2] See November 2003 order.
[3] R.C. 2744.03. Defenses or immunities of subdivision and employee.
"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies: * * *
(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
[4] See testimony of Joseph Felo, D.O., October 6, 2000.
[5] See appellant's brief, p. 37.